2026 IL App (1st) 230401-U

No. 1-23-0401

Order filed July 16, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 15749 |
| | ) | |
| THOMAS MARTIN, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's dismissal of defendant's postconviction petition where his claim that the State knowingly used perjured testimony to secure his conviction was forfeited because it could have been raised on direct appeal.

¶ 2    Following a jury trial, defendant, Thomas Martin, was found guilty of theft and wire fraud, and subsequently sentenced to 30 months' probation. While his direct appeal, which was ultimately unsuccessful (see *People v. Martin*, 2022 IL App (1st) 191239-U), was pending, he filed a *pro se* postconviction petition claiming that the State knowingly used perjured testimony from one of its

witnesses during his trial. On the State's motion, the circuit court dismissed Martin's petition. He now appeals the dismissal, contending he made a substantial showing that the State knowingly used perjured testimony from a witness whose testimony was critical to its case. For the reasons that follow, we affirm the circuit court's dismissal.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Jury Trial and Direct Appeal

¶ 5     Martin was the president of Antares Iron & Copper, Inc. (Antares). A grand jury indicted him on two counts of theft and wire fraud based on allegations that he transferred funds from Antares' 401(k) plan without authorization, which belonged to Antares' employees as the plan's beneficiaries.

¶ 6     At a jury trial, the State presented the testimony of Mary Jo Stvan, the president of Merit Benefits Group, the company that designed Antares' 401(k) plan. Although 401(k) plans allowed for employee contributions, all of the contributions in Antares' plan came from Antares. Stvan noted that Martin was the plan's trustee, and he had complete control over how the funds of the plan were invested. During her testimony, the State introduced, and the trial court admitted into evidence, the plan document for Antares' 401(k). Stvan testified that, under "[a]rticle 12" of the plan, there was a no-reversion-to-employer provision. She explained that this provision meant the funds in the plan were for the benefit of Antares' employees, not Antares, and those funds could not revert back to Antares "under any circumstance" except "for a sliver of a mistake," such as a "miswritten check" or "mathematical calculation error." According to Stvan, this provision did not allow funds to be returned to the employer simply because someone changed his or her mind. Stvan further observed that, under the plan, the trustee was not allowed to amend the plan to claw back benefits that had "already been accrued by a participant."

¶ 7 Following Stvan's testimony, the State presented evidence that Martin transferred approximately $79,000 from Antares' plan through a series of four transfers in 2010 and 2013. The State also presented testimony from former employees of Antares, who testified that they did not authorize Martin to transfer their 401(k) funds.

¶ 8 In Martin's defense, he stated that Antares started "hemorrhaging money" in 2008 during the economic downturn. Despite Antares' struggles, Martin did not fire any employees and maintained their health insurance. Martin testified that, in early 2010, he held a meeting with some employees, where he told them about the company's struggles and his intention to use Antares' 401(k) plan to keep the company operating. Around this time, Martin made the first of four transfers from Antares' 401(k) plan, withdrawing approximately $50,000. He explained that, had he not done so, the company would have failed. Through the transfers from Antares' 401(k) plan, Martin acknowledged breaching his fiduciary duty under civil law, but he asserted that he withdrew the funds to keep the company operating and never intended to permanently deprive his employees of their money. Ultimately, however, the company ceased operating due to its financial issues. The defense also presented testimony from former Antares employees, some of whom heard Martin discuss using the 401(k) plan's funds to keep the company operating and others who, although they did not attend the meeting, testified they had no issue with Martin doing so.

¶ 9 Following closing arguments, the jury found Martin guilty of theft and wire fraud. The trial court subsequently sentenced him to 30 months' probation. On direct appeal, Martin contended that the court erred in responding to multiple notes from the jury during its deliberations and that the court should have given the jury an instruction about whether the State timely commenced its prosecution against him. *Martin*, 2022 IL App (1st) 191239-U. This court rejected both challenges and affirmed his convictions. *Id.*

¶ 10                              B. Postconviction Proceedings

¶ 11    In June 2021, while Martin's direct appeal was pending, he filed a *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). As pertinent to this appeal, Martin claimed that the State knowingly used perjured testimony from Stvan, alleging that she knew Antares' 401(k) plan "required" the funds "to be returned to Antares," yet testified to the contrary. Specifically, Martin highlighted section 2.2.2 of article 2 of the plan document and asserted that the funds in the plan were required to be returned to "Antares to use as [it] may see fit." Additionally, Martin claimed that, because Antares' plan prohibited employee contributions under section 2.2.3 of article 2, the plan drafted by Stvan conflicted with unspecified portions of the Internal Revenue Code, resulting in the plan being "void."

¶ 12    As for the prosecutor's knowledge of Stvan's alleged perjury, Martin claimed that the prosecutor "dangled golden carrots before" multiple witnesses, "informing them that he was trying to get 'their' money back, whilst knowing that the subject money, as a matter of law, was required to be returned to Antares." Martin also asserted in a footnote that "the prosecutor[] suborned [Stvan's] perjury and himself lied to both the Court and the trial jury." To support his claim, Martin attached the relevant portions of Antares' 401(k) plan document to his petition.

¶ 13    In court, Martin asserted that he wanted to represent himself in the postconviction proceedings. The circuit court allowed him to do so, docketed the petition, and advanced it to second-stage proceedings. Thereafter, the State moved to dismiss the petition, arguing that his prosecutorial misconduct claim was forfeited because it could have been raised on direct appeal. Additionally, the State argued that Martin failed to identify any false testimony by Stvan and failed to present any support for his claim that the prosecutor knew Stvan's testimony was false. In January 2023, the court granted the State's motion. The court did not specifically address Martin's

prosecutorial misconduct claim, but found that his petition failed to make a substantial showing of any constitutional violation.

¶ 14    This appeal follows.

¶ 15                                    II. ANALYSIS

¶ 16    Martin contends that his postconviction petition should have advanced to a third-stage evidentiary hearing because he made a substantial showing that the State knowingly presented the perjured testimony of Stvan, who was critical to its case. Specifically, Martin posits that, while Stvan testified at trial that the funds in the plan belonged to Antares' employees, as the plan's beneficiaries, Antares' 401(k) plan document demonstrates that the funds in the plan were required to be returned to Antares. The State argues, however, that Martin forfeited his claim because he could have raised it on direct appeal. Martin did not file a reply brief and therefore has not responded to the State's forfeiture argument.

¶ 17    The Act provides a three-stage process for defendants who allege that they have suffered a substantial deprivation of their constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. A postconviction "petition is not a substitute for appeal but, rather, is a collateral attack." *People v. Reed*, 2020 IL 124940, ¶ 18. As such, "issues that could have been raised on direct appeal, but were not, are forfeited." *Id.* Generally, a claim could have been raised on direct appeal if it relies solely on the trial record. See *People v. Enis*, 194 Ill. 2d 361, 375-76 (2000). While many claims that the State knowingly used perjured testimony require evidence from outside the trial record, such as affidavits, undisclosed prosecutorial agreements or investigative reports, or other evidence (see *People v. Steidl*, 177 Ill. 2d 239, 262 (1997); *People v. Olinger*, 176 Ill. 2d 326, 350 (1997); *People v. Brown*, 169 Ill. 2d 94, 99-100 (1995)), some claims are based entirely on the trial record.

See *People v. Potter*, 384 Ill. App. 3d 1051, 1058-59 (2008); *People v. Junior*, 349 Ill. App. 3d 286, 290-92 (2004).

¶ 18    In this case, Martin's claim that the State knowingly used perjured testimony from Stvan is based entirely on the trial record, namely Stvan's testimony and Antares' 401(k) plan document, which were both part of the trial record and available to Martin when he pursued his direct appeal. Despite this, in Martin's opening brief—without addressing forfeiture—he generally states that he supported his claim with not only the 401(k) plan document, but also "a letter from DATAIR, a company that assisted in developing the Antares 401(k) plan" and a summary of an interview between Stvan and Michael Fransen, an investigator with the Department of Labor. However, Martin does not explain, either in his petition or on appeal, how either document supports his claim that Stvan committed perjury or that the State knew she committed perjury.

¶ 19    Although Martin characterizes the DATAIR letter as being from DATAIR, it is actually a letter from the Internal Revenue Service addressed to DATAIR, stating that Antares' 401(k) plan complied with the Internal Revenue Code. Additionally, the summary of the interview between Stvan and Fransen generally described the business relationship between Stvan and Martin, and noted that the plan was worth approximately $90,000 as of December 2008. But nothing in either document provided any evidence that Stvan committed perjury or that the State knew she committed perjury. Simply attaching documents to a postconviction petition does not transform a record-based claim into one relying on evidence outside the trial record when those documents do not support the claim asserted. Rather, to avoid forfeiture, a claim must "*rel[y] on evidence*" outside the trial record. (Emphasis added.) *Enis*, 194 Ill. 2d at 375-76.

¶ 20    Martin's petition also raised a related claim that Stvan's plan conflicted with unspecified portions of the Internal Revenue Code, resulting in the plan being void. Yet Martin does not explain

how this showed Stvan committed perjury. Even assuming the allegation could support such a claim, the claim was also based only on Stvan's testimony and Antares' 401(k) plan document because Martin did not rely on any other evidence from outside the trial record to support it. While claims alleging the State's knowing use of perjured testimony frequently depend on evidence outside the trial record, Martin's claim, as presented, did not. Therefore, he could have raised the claim on direct appeal. See *People v. Simpson*, 204 Ill. 2d 536, 551-52 (2001) (where the defendant's claim that a police sergeant provided false testimony was entirely based on evidence "in the record," the defendant could have raised the claim on direct appeal). Consequently, as presented, Martin's claim is forfeited. *Reed*, 2020 IL 124940, ¶ 18.

¶ 21   Nevertheless, forfeiture is not "a jurisdictional or absolute bar to review of procedurally defaulted claims, but is rather a rule of administrative convenience." *Simpson*, 204 Ill. 2d at 552. Strict application of the forfeiture doctrine will be relaxed when "fundamental fairness so requires." (Internal quotation marks omitted). *Id.* To show fundamental fairness requires review of a forfeited claim, "the defendant must satisfy a 'cause and prejudice' test by objectively showing that defense counsel's efforts to raise the claim on direct review were impeded *and* that the error so infected the entire trial that the defendant's conviction violates due process." (Emphasis in original.) *Id.* (quoting *People v. Franklin*, 167 Ill. 2d 1, 20 (1995)). As noted, Martin did not file a reply brief to address the State's forfeiture argument, and he likewise has not presented a cause-and-prejudice argument to overcome his forfeiture. Consequently, we decline to excuse Martin's forfeiture, and because forfeiture presents a legal bar to relief, Martin's petition failed to make the substantial showing necessary to advance beyond second-stage proceedings. See *People v. Blair*, 215 Ill. 2d 427, 445 (2005) ("Determinations of *** forfeiture are inherently legal determinations which may bar relief under the Act.").

¶ 22                                      III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.